JOANNE F. STRODE, *Admx. v.* HARRY L. DYER

(No. 7874)

Submitted October 23, 1934. Decided December 22, 1934.

*Somerville & Somerville* and *F. G. Musgrave,* for plaintiff in error.

*Robert L. Hogg* and *J. G. F. Johnson,* for defendant in error.

LITZ, JUDGE:

Joanne Strode, as administratrix of the estate of her husband, A. E. Strode, deceased, recovered judgment upon a verdict of $6,000.00 in her favor against Henry L. Dyer for the alleged wrongful death of the decedent in a collision between a Ford coupe automobile, owned and driven by Strode, and an Essex sedan car belonging to and operated by defendant. The automobiles collided at the center of the intersection of Center Street and State Route 62 in the village of Mason City, Mason County, West Virginia, in the afternoon of October 29, 1932. State Route 62, over which Dyer was traveling, is sixty feet in width with a strip twenty feet wide of hard surface in the center and gravel on the sides. Center Street,

on which Strode was driving, is of gravel surface, sixty-five feet wide, and intersects at right angles with Route 62. There is an arterial stop sign at the entrance of Center Street into Route 62. The Dyer car kept to the right side of the road until immediately before the collision when it suddenly turned to the left in the direction the Strode car was proceeding.

The evidence on behalf of plaintiff tends to prove that the Strode car entered Route 62 100 to 200 feet ahead of the Dyer car. The testimony for defendant on this score is rather indefinite and unsatisfactory. He does not say why he turned to the left, in the direction the Strode car was moving, rather than to the right into Center Street in an attempt to avoid the collision.

Defendant contends in the assignments of error (1) that the evidence of negligence on his part is insufficient; (2) that the deceased was guilty of contributory negligence as a matter of law; and (3) that the trial court rejected competent evidence.

Assuming that Strode was guilty of contributory negligence in entering the state highway, the negligence of defendant under the theory of the last clear chance was, in our opinion, a jury question. In view of the action of defendant in turning his car to the left when he could have apparently avoided the collision by veering to the right into Center Street, we cannot say as a matter of law that he was free from negligence.

The trial court limited the testimony of defendant and his wife, who was riding with him, to his actions and movements relating to the accident. Defendant insists that he and his wife should have been permitted to testify as to the actions and movements of Strode. This phase of the testimony was excluded under the inhibition of Code 1931, 57-3-1, as follows: "No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the

time, of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. * * * Provided, however, That where an action is brought for causing the death of any person by a wrongful act, neglect. or default under article seven, chapter fifty-five of this Code, the physician sued shall have the right to give evidence in any case in which he is sued; but in this event he can only give evidence as to the medicine or treatment given to the deceased, or operation performed, but he cannot give evidence of any conversation had with the deceased."

The correctness of the ruling of the trial court depends upon whether the phrase, "personal transaction or communication", should be given a liberal or restricted meaning. This court has heretofore followed the liberal rule adopted by the general current of authority. In *Freeman* v. *Freeman,* 71 W. Va. 303, 309, 76 S. E. 657, the court excluded the testimony of interested parties, as to the mental capacity of a decedent, based upon their associations with him. In the opinion, it is said: "The purpose of (the statute) * * * is to prevent a person having an interest to be affected by the suit from giving testimony concerning the words, or actions of a decedent, which he; if living, could contradict, against those who claim under the decedent. Death having sealed the lips of one, the law closes the mouth of the other. Therefore, the words 'transactions or communications,' as used in the statute, should be given a liberal construction. To limit their meaning so as to include only individual conversations and direct personal dealings between the witnesses and deceased, would be too narrow, a construction, and would result in defeating the purpose of the statute in many cases. * * * 'A transaction within the meaning of the statutes under discussion is an action participated in by witness and decedent, or something done in decedent's presence, to which, if alive, he could testify of his personal knowledge, and the term embraces every variety of affairs, the subject of negotiations, actions, or

contracts. It has also been said that personal transactions and communications with a person since deceased include every method by which one person can derive any impression or information from the conduct, condition, or language of another.' 40 Cyc. 2314." The testimony of interested witnesses as to the mental capacity of a decedent has been excluded in subsequent decisions of this court upon the ground that the impressions and conclusions reached by the witnesses as to the sanity or the insanity of a deceased party must be arrived at from observations of the conduct of, or from communications had with, such deceased person, and that, in either event, they fall within the inhibition of the statute. *Curtis* v. *Curtis,* 85 W. Va. 37, 100 S. E. 856; *Doak, Adm'r.,* v. *Smith,* 93 W. Va. 113, 116 S. E. 691. "The line of demarcation between what is and what is not a personal transaction is not always easy of discernment, though in determining the question the courts have been disposed to give that term a liberal interpretation. Thus, communication is not necessarily confined to conversations. Anything imparted by one to another is communicated by him, even disease. Indeed, a personal communication may be defined as anything which the surviving party claims to have received directly or indirectly from the deceased person, and which the deceased person if living could contradict or explain. Nor is the mode of making the communication by the deceased to the survivor at all controlling. In short, whatever information the witness derives by the use of his senses from the personal presence of the deceased, is a communication from the deceased within the meaning of the statute." 28 R. C. L. 497. "Generally speaking, the proviso retaining the common law rule to the extent of excluding testimony of a party or person interested in transactions with one since deceased or incompetent applies to all civil proceedings, both special and ordinary. In the majority of jurisdictions the wording of the proviso has been held such as to extend its operation to actions ex delicto which are otherwise within its terms as well as to actions ex contractu." Jones Commentaries on Evidence, section 2228. In an

annotation of cases, involving the competency of witnesses in actions for death as affected by statute disqualifying one person as a witness because of the death of another (36 A. L. R. 959), it is said that practically all the cases within the scope of the annotation assume that the disqualifying provision may apply to an action ex delicto and is not limited to actions ex contractu. Among the cases, involving automobile and other vehicular accidents, which follow the general rule, are: *Miller* v. *Walsh's Adm'rx.,* (Ky.) 43 S. W. (2d) 42; *Southern Natural Gas Company* v. *Davidson,* (Ala.) 142 So. 63; *Boyd* v. *Williams,* (N. C.) 175 S. E. 832; *Van Meter* v. *Goldfarb,* 317 Ill. 620, 148 N. E. 391, 41 A. L. R. 343; *Hallowach* v. *Priest,* (Me.) 95 Atl. 146; *Hudson* v. *Houser,* (Ind) 24 N. E. 243.

In *McCarthy* v. *Woolston,* 205 N. Y. S. 507, the court held, in an action against the driver and owner of an automobile, for the death of a guest, that the driver was competent to testify to his actions and the actions of the driver of another car involved in the accident causing the death of the guest, notwithstanding the statute forbidding testimony of personal transactions or communications with the decedent. In the opinion, the court, after expressing the view that the statute does not contemplate transactions in which the parties are independent participants, stated: "The acts of Woolston, Jr., (the driver) would naturally have been the same had McCarthy (the guest) not been present. They did not arrive primarily at any transaction or communication between them." The decision may have been influenced because both participants in the transaction were living. The driver of the other car, charged by Woolston as being responsible for the accident, was competent to testify.

The Supreme Court of Wisconsin has followed the New York case in *Seligman* v. *Hammond,* 236 N. W. 115, and *Krantz* v. *Krantz,* 248 N. W. 155. The Wisconsin statute inhibits a party from giving evidence "in respect to any transaction or communication *by him personally with* a deceased or insane person." In the *Seligman* case, the court said: "We think the transaction meant in (the

statute) * * * is a personal transaction with the deceased; a transaction in which each is an active participant, and that it does not prohibit the survivor from describing an event or physical situation, or the movements or actions of a deceased person, quite independent and apart, and in no way connected with, or prompted or influenced by reason of, the conduct of the party testifying." In *Krantz* v. *Krantz,* it is stated: "There are conflicts in the results at which courts have arrived, under the statutes, on this subject in other states. To some extent those conflicts are due to differences in the wording of the statutes involved. Under section 325.16, Wis. Stats., the prohibition as to a party (or other person included in the class described in the statute) testifying is solely that he shall not testify 'in respect to any transaction or communication *by him personally with* a deceased or insane person,' etc. When due significance is accorded the italicized words, 'by him personally with,' the transaction meant in that statute is, as we held in *Seligman* v. *Hammond, supra,* a mutual transaction between the deceased and the witness who survives, in which both, the survivor, as well as the deceased, actively participated." It will be observed that the Wisconsin statute is more favorable than ours to the view that the actions of participants in an automobile accident are not transactions or communications within the meaning of the exclusion. The statute in this state also has an additional feature not found in the Wisconsin or New York statutes. It provides that "where an action is brought for causing the death of any person by a wrongful act, neglect or default under article seven, chapter fifty-five of this Code, the physician sued shall have the right to give evidence in any case in which he is sued; but in this event he can only give evidence as to the medicine or treatment given to the deceased, or operation performed, but he cannot give evidence of any conversation had with the deceased." Under the interpretative rule, that the expression of one thing is the exclusion of another, there is a plain implication in this proviso of the statute that the words "personal transaction or communication" includes transac-

tions involving death due to negligence. Some states have modified the rule by statute. The New Hampshire statute permits the disqualified witness to testify whenever it clearly appears to the court that injustice may be done without his testimony. The Virginia statute provides: "In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence." Whatever may be our views on the policy of the West Virginia statute as interpreted herein, we believe the change, if any, should be made by the legislature.

The judgment of the circuit court is affirmed.

*Affirmed.*

MAXWELL, JUDGE, dissenting:

I conceive that the primary meaning of "transaction" is the doing or performing of business. Cf. Bouvier's Law Dictionary; Webster's, and Standard Dictionaries. This necessarily involves the idea of mutuality—reciprocal dealing. Situations based on reciprocation should be distinguished from those in which the parties are independent participants. In the latter group, the thing just happens—casually.

The statute (Code, 57-3-1) places a ban on testimony in respect of "any personal transaction or communication" between the interested party and a deceased person. Beyond doubt a personal communication, being an interchange of thought, involves mutuality. And because of the terms "transaction" and "communication" (both personal) being used together in the statute, disjunctively,

it would seem that the basic idea of mutuality impregnates the whole. No shade of meaning of any word in the quoted phrase can properly be said to embrace casual occurrences.

I think that those courts which have included within the term "transaction" all sorts of chance happenings have gone beyond the plain signification of the word and have given a strained meaning to the statute, with the result that what was designed to prevent certain evils has been made to foster others.

Therefore, it would seem that this Court went too far in *Freeman* v. *Freeman*, 71 W. Va. 303, 76 S. E. 657, in this holding: "The words 'personal transactions or communications,' within the meaning of sec. 23, ch. 130, Code (now 57-3-1), include every method whereby one person may derive impressions or information from the conduct, condition or language of another." To illustrate: A man, alone, is carefully and lawfully driving his automobile on a highway when another automobile carrying a group of drunken rowdies collides with his. One of them is killed and his personal representative sues the lone driver. The survivors in the hoodlum car may all testify; the solitary driver may not. Where is the justice of such an absurd result? Why place a law-abiding person at such extreme disadvantage? The statute does not create any such consequence; it comes from judicial construction.

Another incongruity, as I understand the holdings which the majority adopts: In the supposititious case stated, the lawful driver, because he participated in the transaction, could in no event testify, but if he were not the owner but was accompanied by the owner who was later sued for damages, the latter could testify because he did not participate in the transaction. If the courts will but give to the phrase "personal transaction" its primary meaning, such inconsistencies will not be promoted.

Our statute, Code 57-3-1, carries the provision:

"Provided, however, That where an action is brought for causing the death of any person by

'a wrongful act, neglect or default under article seven, chapter fifty-five of this Code, the physician sued shall have the right to give evidence in any case in which he is sued; but in this event he can only give evidence as to the medicine or treatment given to the deceased, or operation performed, but he cannot give evidence of any conversation had with the deceased."

This is emphasized in the majority opinion in justification of the interpretation given the statute. It is said that the plain implication from this proviso is that " 'personal transaction or communication' includes transactions involving death due to negligence." With all deference, I cannot accept this deduction. The relation between the physician and his patient is a contractual affair—a personal transaction. But for the proviso, the physician would be barred from testifying by the very terms of the statute. Hence, the necessity of the proviso. All of which is far afield from a casual transaction.

Therefore, I dissent. Judge Hatcher authorizes me to say that he concurs herein.