Ray H. **MORGAN**, Plaintiff,

v.

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**, Defendant.

**Civil Action No. 5:96–1978.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Aug. 29, 1997.

Eric M. Francis, Lewisburg, WV, for Plaintiff.

Mary H. Sanders, Charleston, WV, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is Defendant Allianz Life Insurance Company of North America's motion for summary judgment. For the reasons that follow, the Court **GRANTS** the motion.

### I. FACTUAL BACKGROUND

In December 1988, Roy L. Morgan (the Decedent) purchased a group term life insurance policy with a value of $100,000.00. North American Life and Casualty Company, now known as Allianz Life Insurance Company of North America, Incorporated (the Insurer), assumed the policy obligations in October 1991. According to the Insurer, Citicorp Insurance Services, Incorporated, the group's third-party administrator (TPA), notified the Decedent by letter in February 1993, announcing a reduction in the group policy coverage from $100,000.00 to $50,000.00. The letter contained a new certificate of insurance stating the new policy amount of $50,000.00 and a rate schedule reflecting the reduction of the policy coverage. The letter also advised the insured he could convert the amount of coverage that was being terminated to an individual policy.

Mr. Morgan died on August 18, 1993, never having exercised the conversion privilege.

After his death, the beneficiary of the policy, the Decedent's brother Ray Morgan (the Beneficiary), submitted a claim for benefits under the policy. The TPA approved the claim and on October 13, 1993 sent the Beneficiary a check for $50,000.00. The Beneficiary then filed this civil action, alleging the Insurer breached the insurance contract by failing to pay the Beneficiary full policy benefits of $100,000.00.[1]

Resolution depends on the answer to the following: Did the Decedent receive the February 1993 letter from the TPA indicating the reduction in policy coverage? The parties apparently agree that if he did, the actual coverage is limited to $50,000.00, Def.'s Mem. Supp. at 5, and thus the Insurer committed no breach.

Neither the Beneficiary nor his witnesses have direct or indirect knowledge of whether the Decedent received the letter. In the form of an uncontested affidavit of Larry Williams, president of the TPA for the Allianz policy issued to the Decedent, the Insurer has offered the sole evidence the Decedent received the letter. Williams states he has personal knowledge that in February 1993 his company sent all members of the Decedent's group term life insurance plan a letter describing the reduction in coverage. *See* Williams Aff. I ¶ 4. Williams attests the company sent the Decedent such a letter on February 20, 1993. *Id.* ¶ 5. To corroborate, Williams has provided the company's computer printout records indicating the letter was mailed on that date, as well as a copy of the letter itself.

## II. DISCUSSION

### A. *Admissibility of Williams' testimony*

The Beneficiary invokes West Virginia Code § 57–3–1, commonly known as the Dead Man's Statute, to challenge the admissibility of Larry Williams' testimony and the supporting documentary evidence. The Dead Man's Statute is an exception to the general rule of witness competency that "[n]o person offered as a witness in any civil action ... shall be excluded by reason of his interest in the event of the action ... or because he is a party thereto[.]" W.Va.Code § 57–3–1; *cf.* W.Va.R.Evid. 601; Fed.R.Evid. 601. *See generally Meadows v. Meadows*, 196 W.Va. 56, 60, 468 S.E.2d 309, 313 (1996) (Cleckley, J.) (discussing history of Dead Man's Statute). The Dead Man's Statute provides that no "party ... [or] interested person [who] derives any interest or title ... shall be examined as a witness in regard to any personal transaction or communication between such witness and a person [who] at the time of such examination [is] deceased...."[2]

> The purpose of the Statute
> is to prevent the injustice that would result from a surviving party to a transaction testifying favorably to himself or herself and adversely to the interest of a Decedent, when the Decedent's representatives would be hampered in attempting to refute the testimony by reason of the Decedent's death.... [T]he underlying rationale of dead man's statutes is that a survivor's lips should be sealed because the lips of the Decedent are sealed. In these instances, the Decedent is unable to confront the

1. Initially, the Beneficiary instituted this action in the Circuit Court of Greenbrier County, West Virginia; the Insurer then removed to this court on grounds of diversity jurisdiction.

2. The Dead Man's Statute provides in full:
   No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a

witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. But this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf, nor as to which such deceased person or lunatic shall be given in evidence....
W.Va.Code § 57–3–1.

survivor, give his or her version of the transaction or communication and expose the possible omissions, mistakes or even outright falsehoods of the survivor. *Meadows*, 196 W.Va. at 60, 468 S.E.2d at 313 (quotations and cited authority omitted).

■ To limit the restrictions to the general rule of witness competency and adhere to the liberal thrust of the evidence rules, courts must construe the Dead Man's Statute strictly and limit it to its narrowest application. *Id.* at 61, 468 S.E.2d at 314 (citing *Harper v. Johnson*, 162 Tex. 117, 345 S.W.2d 277 (1961)). *See also Cross v. State Farm Mut. Auto. Ins. Co.*, 182 W.Va. 320, 325, 387 S.E.2d 556, 561 (1989) (citing syl. pt. 1, *Keller v. Hartman*, 175 W.Va. 418, 333 S.E.2d 89 (1985); syl. pt. 5, *Sayre v. Whetherholt*, 88 W.Va. 542, 107 S.E. 293 (1921)) (stating Statute is to be strictly construed and testimony in question is admissible unless clearly excluded). With this caveat in mind, the Court must determine whether the Statute applies here.

■ For the Dead Man's Statute to bar Mr. Williams' testimony, three conditions must be satisfied. *See* syl. pt. 10, *Moore v. Goode*, 180 W.Va. 78, 375 S.E.2d 549 (1988). First, Mr. Williams' testimony must relate to a personal transaction with the Decedent. *See id.* Second, Mr. Williams must be a party to this lawsuit or interested in its event or outcome. *See id.* Third, his testimony must be against the Decedent's personal representative, heir at law, or beneficiary. *See id.*

■ The third condition is clearly met; the first is arguably met.[3] However, because the second condition, relating to Mr. Williams' interest in the action, plainly is not satisfied, the Court need not resolve the applicability of conditions one and three to find the Dead Man's Statute inoperative under the present facts. It is axiomatic that for the Statute to apply, the interest of the person whose testimony is at issue must be "present, certain, and vested, not remote, uncertain, or contingent." *Cross*, 182 W.Va. at 325, 387 S.E.2d at 561 (citing *Lilly v. Ellison*, 107 W.Va. 402, 405–06, 148 S.E. 380, 381 (1929)). *Accord Moore*, 180 W. Va. at 90 n. 19, 375 S.E.2d at 561 n. 19.

■ Interests held so remote as to bar operation of the Dead Man's Statute include: the interest of a corporate agent who is not a shareholder in the interested corporation, syl. pt. 2, *Stansbury v. Bright*, 109 W.Va. 651, 156 S.E. 62 (1930); the interest of an insurance agent where the only assertion is that the agent is an incompetent witnesses by virtue of his interest as an agent, syl. pt. 3, *Cross*, 182 W.Va. 320, 387 S.E.2d 556; and the interest of a bank official in the outcome of a lawsuit in which the bank is a party, *Silling*, 885 F.Supp. at 888 n. 5. On the other hand, courts have excluded testimony offered by a bank executive where the executive was a stockholder interested in the outcome of the lawsuit. *Stansbury*, 109 W.Va. at 652, 156 S.E. at 62.

■ By contrast, Williams' interest is remote indeed. He is an officer not of the Insurer, but of the TPA. The TPA is not a party to this action, is entirely separate from the Insurer, and has "no financial interest whatsoever in the determination of . . . the limits of" the policy. Aff. of Larry Williams II ¶¶ 3, 4, 5. Williams personally has no direct financial interest in the Insurer or in the outcome of this case. *Id.* ¶ 6 . Applying the law to the facts presented here, the Court holds Williams has no interest in the event or outcome of this litigation. The Dead Man's Statute does not bar his testimony.

B. *Establishing the presumption of Decedent's receipt of notice*

Having concluded Williams' evidence is admissible, the Court next must determine the

---

**3.** As this Court has observed, "[t]he term 'personal transactions and communications' has been given a broad interpretation which includes every method whereby one person may derive impressions or information from the conduct, condition or language of another." *Silling v. Erwin*, 885 F.Supp. 881, 885 (S.D.W.Va.1995) (Haden, C.J.) (citing *Kuhn v. Shreeve*, 141 W.Va. 170, 89 S.E.2d 685 (1955); *Miami Coal Co. v. Hudson*, 175 W.Va. 153, 332 S.E.2d 114 (1985)), *aff'd*, 83 F.3d 416 (4th Cir.1996). Given the breadth of the meaning of the term "transaction," it is possible the letter of notice to the decedent falls within its definition.

effect of this evidence on the summary judgment inquiry. The Insurer contends Williams' evidence establishes a presumption that the Decedent received the letter, a point the Beneficiary disputes. As instructed by Federal Rule of Evidence 302, the Court looks to state law to determine the validity of the Insurer's argument. *Hottle v. Beech Aircraft Corp.,* 47 F.3d 106, 107 n. 1 (4th Cir.1995) (federal court sitting in diversity generally applies state law of presumptions, privileges and competency) (citing Fed. R.Evid., Rules 302, 501, 601).

■ In West Virginia, where an insurance notice is placed in the mail, a rebuttable presumption of receipt is established. *National Grange Mut. Ins. Co. v. Wyoming County Ins. Agency, Inc.,* 156 W.Va. 521, 526, 195 S.E.2d 151, 155 (1973) (citing 58 Am.Jur.2d, Notice, § 33). While it is true, as the Beneficiary contends, that the cases relied upon for this proposition, *National Grange* and *Adkins v. State Compensation Dir.,* 149 W.Va. 540, 142 S.E.2d 466 (1965), involve letters sent by *certified* mail, the courts have not held application of the presumption requires notice be mailed in such a fashion. On the contrary, in an appeal of a diversity case from this Court, the Court of Appeals observed " '[a] letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee.' The presumption is especially strong when the delivery is by certified mail." *Federal Deposit Ins. Corp. v. Schaffer,* 731 F.2d 1134, 1137 n. 6 (4th Cir.1984) (quoting C. McCormick, *McCormick's Handbook of the Law of Evidence* § 343 (1972)). *See also* Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 3–1(C)(*o*)(quoting *Schaffer* and McCormick, *supra*). The Supreme Court of Appeals has observed in a related context, "[t]he law has long relied on the United States Postal Service's promise that the mail will get through to its destination. In this the law is seldom disappointed." *Vanscoy v. Neal,* 174 W.Va. 53, 57, 322 S.E.2d 37, 41 (1984). *See also Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct.

417, 418, 76 L.Ed. 861 (1932) (stating "[t]he rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (citing *Rosenthal v. Walker,* 111 U.S. 185, 193, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884)). In accordance with this strong precedent, the Court holds the Insurer's uncontested evidence the TPA mailed notice of the reduction of benefits to the Decedent establishes a presumption that the Decedent received the notice.

■ To rebut the presumption and defeat summary judgment, the Beneficiary has proffered a form, obtained from the Clerk of the Greenbrier County Commission, entitled "Appraisement of the Estate," completed by Joyce and Fred Noble, the executors of the Decedent's estate. The Beneficiary points to a portion of the Appraisement where the executors indicated the Decedent owned, among other things, a $100,000.00 life insurance policy in favor of the Beneficiary. It is unclear where the fiduciaries obtained this information concerning the amount of the policy, but it is clear from depositions they have no firsthand knowledge concerning the Decedent's receipt of the notice.[4] Accordingly, the statement contained on the Appraisement is too remote and irrelevant to rebut the presumption that the Decedent received notice of the reduced coverage.

### C. *"Other issues"*

In a final attempt to defeat summary judgment, the Beneficiary in his response brief makes cryptic reference to "other issues" he could raise at trial.

These other issues include, but are not limited to, the question of proper consideration and contract interpretation. With regards to proper consideration, at trial the plaintiff may raise the issue whether or not just because the defendant made a "bad bargain" that is proper consideration to modify said contract [sic]. As to the issue of contract interpretation, the plain-

---

4. The Nobles acknowledged in deposition testimony they had "no reason to dispute" the Insurer's assertion the letter had been sent to the Decedent. Joyce Noble Dep. at 9; Fred Noble Dep. at 9–10.

tiff may raise the issue of whether or not such language as "if the group policy ends, we will notify you in writing thirty (30) days before the date of the group policy will be canceled [sic]." Even the "traditional" rule that any ambiguity in an insurance policy ... [sic] be resolved in favor of the insured [sic], *Keller v. First National Bank,* 403 S.E.2d 424, 184 W.Va. 681 (1991). It would be Plaintiff's position that said policy language does not cover modification of said policy nor does it state that only mailing and not delivering is required for proper notice.

Pl's Mem. Resp. at 11–12.

As an initial matter, the Court is unable to discern the legal argument the Beneficiary reserves for trial. If Plaintiff is attacking the validity of the contract formation or modification, these are questions of law well suited for disposition through summary judgment.

■ More fundamentally, however, the Beneficiary cannot demonstrate a triable issue and defeat a motion for summary judgment merely by resting on allegations and unsupported assertions. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). Instead, the Beneficiary must offer affirmative evidence to support his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). He has not done so. The proper time to attack the validity of the contract has passed.

### III.  CONCLUSION

Viewing the facts in the light most favorable to the nonmovant Beneficiary, *see Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, the Court finds and concludes the Insurer is entitled to judgment as a matter of law. The Insurer has met its burden to show absence of evidence to support the Beneficiary's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. *See generally Shaw,* 13 F.3d at 798 (discussing summary judgment standard). Accordingly, the Court **GRANTS** Defendant's mo-

tion for summary judgment and directs the Clerk to dismiss the case from the docket.