**Beatrice KIRK**

v.

**Joseph L. MARQUIS.**

Supreme Judicial Court of Maine.

Sept. 18, 1978.

John P. Jabar, Waterville, for plaintiff.

Sherman & Ringer by Alan C. Sherman (orally), Waterville, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

PER CURIAM.

Defendant Joseph L. Marquis, the son of the late Wilfred Marquis and the executor of his estate, appeals from a judgment in the amount of $7,000 in favor of plaintiff Beatrice Kirk, on a contractual claim for compensation due for services rendered the deceased. We deny the appeal.

Over the eleven years immediately prior to his death, Kirk lived with the deceased and worked for him in his business establishments as a grocery store clerk, gas station attendant, waitress, short order cook, and cashier. During the last year and a half of the deceased's life, Kirk also provided nursing services for the deceased. No marriage was ever contracted between the two.

The deceased provided Kirk with food and shelter but otherwise never paid anything to her for her services. Kirk alleges that the deceased repeatedly told her she did not have to worry because he would "take care of her." Upon his death, Kirk requested compensation from his estate. The executor refused to pay anything.

Kirk brought suit for breach of contract, and after a two-day trial the jury returned a verdict for Kirk for the sum of $7,000.

■ The executor argues that the trial court erred in admitting statements of the deceased in evidence. Rule 601 of the Maine Rules of Evidence, which became effective on February 2, 1976, abolished the "Dead Man's Rule" previously contained in 16 M.R.S.A. § 1(2). *Ziehl v. Maine National Bank,* Me., 383 A.2d 1364, 1373 n. 8 (1978). Though before this court he concedes that the admitted statements were no longer barred by the "Dead Man's Rule," the executor contends the statements were nevertheless hearsay which did not meet the requirements of any of the exceptions to the hearsay rule. We disagree. The deceased's assertions that he would "take care of her" clearly reflected his state of mind at the time he made the statements, namely, his understanding that Kirk was to be compensated for her services. That evidence tended to prove that he understood she was not working for him gratuitously. His statements thus qualify for the exception declared by Rule 803(3) of the Maine Rules of Evidence.

■ The executor asserts that there was insufficient evidence to support a verdict for the plaintiff. In order to justify recovery on a contract action, "there must be evidence of either an express or implied promise." *Coombs v. Hogan,* 116 Me. 437, 438, 102 A. 237 (1917). "[T]he law makes it peculiarly the province of the jury to determine, upon the circumstances existing in each case, whether the services were rendered upon the basis of a contract." *Cheney v. Cheney,* 122 Me. 556, 557, 119 A. 531, 532 (1923). In the case at bar, Kirk's testimony of conversations between herself and the deceased was confirmed and corroborated by the testimony of two disinterested witnesses. The executor puts much emphasis on the fact that on cross-examination Kirk stated that she had loved the deceased and conceded that she might have stayed with him even if he hadn't promised "to take care of her." But the question whether she would have continued to *live* with

the deceased in the absence of an agreement for compensation has little bearing on the issue whether she would have continued to *work* for the deceased without compensation. In any event, the existence of an implied contract on this whole record was a factual question for the jury to decide. Here there clearly was sufficient evidence to support the jury's finding that an implied contractual agreement existed.

■ Over the executor's objection the trial court instructed the jury not to consider the value of the deceased's estate in determining the plaintiff's damages. This instruction was entirely correct. The extent and value of the deceased's estate obviously is relevant to the estate's *ability* to pay, but that was not the issue before the jury. The trial court properly instructed the jury that damages should be determined by ascertaining the reasonable value of the work performed by Kirk for the deceased. There was no evidence that either the deceased or Kirk expected her compensation to be contingent upon the amount of property he might have left at the time of his death. Whether he died a prince or a pauper, the obligation of the deceased's estate remains the same.

■ The executor submitted several proposed jury instructions, all of which the presiding justice rejected. His charge was in all respects clear, complete, and correct. He apprised the jury of the difference between express and implied contracts, and of the necessity of finding that the parties have an understanding that Kirk would be paid for her services. He told them that should they find the services were rendered purely out of love and affection for the deceased, without anticipation of pecuniary compensation, a defendant's verdict was required. Some of the executor's proposed instructions covered virtually identical ground. It was well within the presiding justice's discretion to conclude that it would be repetitious and unproductive to give a second set of instructions which could add nothing to instructions already given and which might engender jury confusion. Other instructions urged by the executor were erroneous statements of the law as applicable to the evidence before the jury or were otherwise properly rejected in the form proposed.

The entry must be:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ., concurring.