761 P.2d 452

**In the Matter of the ESTATE OF Gertrude BERGMAN, Deceased.**

**In the Matter of the ESTATE OF Lenore BERGMAN, Deceased.**

**Adele CATANACH and Josephine Jacques, Plaintiffs–Appellees,**

v.

**James H. GUNN, Personal Representative, Defendant–Appellant.**

**No. 9929.**

Court of Appeals of New Mexico.

June 30, 1988.

Patrick R. Brito, Santa Fe, for plaintiffs-appellees.

Robert Suzenski, Robert Suzenski, P.C., Scottsdale, for defendant-appellant.

## OPINION

MINZNER, Judge.

James H. Gunn (Gunn), as personal representative of the estates of Gertrude Bergman (Gertrude) and Lenore Bergman (Lenore), appeals from the decision of the district court allowing the claims of Adele Catanach and Josephine Jacques (Catanach and Jacques or claimants) against the estates, the probates of which had been consolidated. Both claims arise out of an alleged agreement with Lenore that she would pay claimants, who worked for Lenore and her sister Gertrude as private nurses, two weeks' vacation pay each year. However, the written notations that each claimant testified she and Lenore signed could not be located after her death. On appeal, Gunn contends that the trial court

erred in failing to exclude claimants' testimony concerning their discussion with Lenore. Alternatively, Gunn contends that, if their testimony was admissible, the evidence was not sufficient to support the court's findings and conclusions. We affirm the district court's decision as to liability, but reverse and remand for the entry of amended findings and conclusions as to damages.

## BACKGROUND.

This appeal was originally filed with the clerk of the supreme court. On motion by claimants, it was transferred to this court. Although the supreme court has reserved jurisdiction over appeals from the district courts in which one or more counts of the complaint allege a breach of contract or otherwise sound in contract, see SCRA 1986, 12–102(A)(1), in this case the proceedings were initiated not by a complaint, but rather by Gunn's petition for an informal probate of Gertrude's will and informal appointment as the personal representative of her estate. Under these circumstances, there is no contract "count" within the meaning of the appellate rule.

■ After Gunn published notice of his appointment, Catanach and Jacques filed their claims against Gertrude's estate in district court. Subsequently, Gunn petitioned for formal probate of Lenore's will and formal appointment as personal representative of her estate. The record does not indicate whether he published notice of this appointment, but Catanach and Jacques filed petitions to hear and pay claims within two months of the court's order appointing Gunn to administer Lenore's estate. Under these circumstances, we are satisfied that the trial court had jurisdiction to allow the claims. Cf. Corlett v. Smith, 106 N.M. 207, 740 P.2d 1191 (Ct.App.1987) (plaintiff in a wrongful death claim has the burden of establishing the timeliness of a claim against decedent's estate, because the nonclaim statute establishes a jurisdictional bar against untimely claims).

At the hearing scheduled on the merits of the claims, each claimant testified that she and Lenore had entered into a written agreement in early .1978 and that Lenore said she would put the writing in the file she maintained for each of them. Each also testified that the agreement consisted of her commitment to work for an hourly rate, plus two weeks vacation each year. Finally, each claimant testified that, subsequent to the agreement, Lenore stated that she would pay for vacation time after she sold her ranch in Minnesota.

It is undisputed that neither claimant ever submitted a bill for vacation pay and that none was paid. It is also undisputed that no written evidence of an agreement could be found by Gunn, who searched all of the records remaining at Lenore's death, or by claimants, who searched the files Lenore maintained for them. Finally, it is undisputed that Lenore sold the ranch in 1981, although the record supports an inference that she did not receive the entire purchase price at that time.

The trial court ruled that Josephine Jacques was entitled to $4,670.40 for unpaid vacation pay which was accrued during her employment from February 1967 to February 1983. The trial court also ruled that Adele Catanach was entitled to $3,736.32 for unpaid vacation pay which was accrued during her employment from January 1967 to February 1983. These are the exact amounts each claimant had originally requested.

There appear to be five appellate issues: (1) whether the agreement falls within the statute of frauds; (2) whether evidence of Lenore's statements was inadmissible hearsay; (3) whether the trial court abused its discretion in admitting evidence other than the original notations; (4) whether there was substantial evidence to support the trial court's findings as to liability; and (5) whether there was substantial evidence to support the trial court's findings as to damages. We discuss these issues under three headings: the statute of frauds, the admissibility of claimants' evidence, and the sufficiency of the evidence.

## THE STATUTE OF FRAUDS.

■ Gunn contends that claimants were not entitled to recover in the absence of a

written agreement. *See generally Westerman v. City of Carlsbad,* 55 N.M. 550, 237 P.2d 356 (1951) (an action may not be brought upon an oral contract for personal services which could not be performed within one year). We disagree.

Under the majority view, full performance of an oral contract not to be performed within one year renders the contract enforceable by the party who has performed. *See* J. Calamari & J. Perillo, *The Law of Contracts* § 19–23 at 812 (3d ed. 1987); *see generally Restatement (Second) of Contracts* § 130 (1981) (when one party to a contract has completed his performance, the one-year provision of the [statute of frauds] does not prevent enforcement of the promises of other parties). On the facts found by the trial court, the statute is not applicable. *See Edwards v. Wyckoff Elec. Supply Co.,* 42 N.J.Super. 236, 126 A.2d 29 (1956).

## THE ADMISSIBILITY OF CLAIMANTS' EVIDENCE.

Until 1973, in New Mexico, a claimant could not obtain a judgment on his or her own evidence in a suit against an estate with respect to any matter occurring before the death of the deceased person, unless that evidence was corroborated. *See* 1959 N.M.Laws, ch. 261, § 1 (codified as NMSA 1953, § 20–2–5; repealed by 1973 N.M.Laws, ch. 223, § 2, effective July 1, 1973). This statute was similar to so-called "Dead Man's Statutes" enacted in many other states. It is not clear that claimants would have been entitled to recover against Gunn on the evidence they offered at trial had the statute been in effect. *See generally* Annotation, *Corroboration Required Under Statute Prohibiting Judgment Against Representative of Deceased Person on Uncorroborated Testimony of His Adversary,* 21 A.L.R.2d 1013 (1952). We assume that they would not. *Id.*

Nevertheless, the adoption of the New Mexico Rules of Evidence, *see* SCRA 1986, 11–101, has changed the nature of the issue presented to the trial court by the evidence claimants offered. *Cf. Johnson v. Porter,* 14 Ohio St.3d 58, 471 N.E.2d 484 (1984) (holding that dead man's statute was superseded by more recently adopted rules of evidence; relevant inquiry in Ohio is whether an exception exists under which hearsay statements by a deceased person are admissible). Under the rules of evidence, relevant evidence is generally admissible, SCRA 1986, 11–402, but hearsay generally is not. SCRA 1986, 11–802; *see generally* Annotation, *Dead Man's Statutes as Affected by Rule 601 of the Uniform Rules of Evidence and Similar State Rules,* 50 A.L.R.4th 1238 (1986).

Gunn contends that Lenore's statements regarding the agreement to pay for vacation time were not admissible under the only possible hearsay exception, the residual exception for statements not specifically covered by other exceptions to the hearsay rule. *See* SCRA 1986, 11–803(X); 11–804(B)(6). Gunn argues that, under the circumstances of this case, this evidence does not have the requisite "circumstantial guarantees of trustworthiness." *Id.* We disagree with Gunn's characterization of claimants' evidence.

Under the New Mexico Rules of Evidence, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SCRA 1986, 11–801(C). This definition recognizes that the prohibition of the hearsay rule does not apply to all out-of-court utterances or writings; they are subject to the exclusionary impact of the hearsay rule only when they are offered to prove the truth of the matter asserted therein. *See McCord v. Ashbaugh,* 67 N.M. 61, 352 P.2d 641 (1960).

> Where the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings,* their utterances may be proved without violation of the hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein.

VI *Wigmore on Evidence* § 1770 (Chad. rev.1976) (emphasis in original). When offered for other purposes, such evidence is admissible, but only for those purposes.

■ Proof of oral utterances by parties in a contract suit constituting offer and acceptance are not evidence of assertions offered testimonially, but rather of verbal conduct to which the law attaches duties and liabilities. E. Cleary, *McCormick on Evidence* § 249 (3d ed. 1984). Here, claimants' testimony of Lenore's actions and statements at the time they were hired is not hearsay, because it was admitted to prove that Lenore had accepted an offer made by claimants. *See National Labor Relations Bd. v. H. Koch & Sons*, 578 F.2d 1287 (9th Cir.1978) (testimony offered to show that declarant uttered words of assent, regardless of their truth); *Gyro Brass Mfg. Corp. v. United Auto. Aircraft & Agric. Implement Workers of Am.*, 147 Conn. 76, 157 A.2d 241 (1959) (testimony of the contents of an utterance, offered only to prove that it was made).

When an extrajudicial statement aids in proving knowledge, belief, good faith, reasonableness, or motive, it is admitted as circumstantial evidence thereof. *Id.; see also* VI *Wigmore on Evidence* § 1789. Claimants' testimony of Lenore's actions and statements at the time they were hired was also admitted to prove that statements were made on which claimants reasonably relied. *See Eavenson v. Lewis Means, Inc.*, 105 N.M. 161, 730 P.2d 464 (1986) (proof of the elements of promissory estoppel is sufficient to avoid the statute of frauds). Without deciding whether claimants proved the elements of promissory estoppel, we conclude that their testimony was admissible for purposes of proving that a promise on which they reasonably relied was made.

■ Gunn further contends that the trial court erred in permitting claimants to establish the contents of the missing notations by oral testimony. This contention is without merit since the record indicates that the original notations were either lost or destroyed after Lenore's death. *See* SCRA 1986, 11–1004; 11–1008. Even the requirement of a writing does not preclude proof of a lost document. *See Johnson v. Johnson*, 74 N.M. 567, 396 P.2d 181 (1964).

## THE SUFFICIENCY OF THE EVIDENCE.

■ Gunn argues that, in the absence of corroboration, the words attributed to Lenore by claimants at the time they were hired are not sufficient evidence to support the findings as to liability. *See Walter v. Warner*, 298 F.2d 481 (10th Cir.1962); *In re Connors' Estate*, 53 Cal.App.2d 484, 128 P.2d 200 (1942). This argument appears to be premised on the view that those words were hearsay. *Id.* We have concluded they were not. In addition, claimants here offered evidence of their own statements, actions, and beliefs, as well as the words attributed to Lenore. Gunn generally challenges the sufficiency of their proof, but we view this argument as no more than an attempt to resurrect the repealed statute limiting the right to recover against an estate. *See* NMSA 1953, § 20–2–5. Since that statute has been repealed, this argument must be rejected.

We do not decide whether a higher standard of proof should be applied to cases like this as a matter of policy or, if such a standard is applicable, whether the evidence would have been sufficient to satisfy such a standard. *Cf. Walter v. Warner* (evidence to prove oral contract to convey real property must clearly establish facts sufficient to raise convincing implication that contract was made and fully performed; evidence must tend to prove primary facts constituting contract). This argument was not raised at trial. Under these circumstances, error, if any, has not been preserved. *Cf. Hamel v. Winkworth*, 102 N.M. 133, 692 P.2d 58 (Ct.App.1984) (a party must object when court omits an accepted instruction).

Gunn also argues there is insufficient evidence to support the trial court's findings as to damages. We agree.

The party suing for specific damages has the burden of proving those damages with reasonable certainty so that a determination of the amount to be awarded will not be based on speculation or conjecture. *Gulf Ref. Co. v. Etcheverry*, 85 N.M. 266, 511 P.2d 752 (Ct.App.1973). Damage awards are found to be excessive only in

extreme cases. *Martinez v. Teague,* 96 N.M. 446, 631 P.2d 1314 (Ct.App.1981).

■ The question of excessiveness is determined by whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award. *Gonzales v. General Motors Corp.,* 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976). One of the tests of excessiveness is whether there is an indication of a mistaken measure on the part of the factfinder. *Id.*

■ Here there was no evidence presented to explain the method of measuring the damages. The amount awarded does not follow from the only factors we have in the record—i.e., length of employment and rate of pay.

Each claimant testified that she began work for the sisters in 1978, yet the court found they began work in 1967. Each claimant's file was introduced; the weekly bills in each case began in 1978. There was no other evidence of any different beginning date.

Two weeks (eighty hours) pay at $6.50/hour would equal $520; at $8.00/hour, it would be $640. During the period from 1978 until the ranch was sold in 1981, claimants were paid $6.50/hour. If they were entitled to three years vacation pay for this period, the sum due would be $1,560 each. Later, until 1983, claimants were paid $8.00/hour. If they were entitled to two years vacation pay for this period, the sum due would be $1,280 each. Based on these calculations, the total amount due each of them would be $2,840 plus appropriate additional amounts for New Mexico gross receipts taxes.

However, it is not clear from the record whether claimants intended to claim vacation pay for 1983 nor on what rate of pay the sum due for 1981 should be based. Further, Catanach testified she did not intend to claim vacation pay for 1981, when she worked as a relief nurse, but she subsequently indicated that she had only worked as a relief nurse for a few months. Under these circumstances, the case must be remanded for further proceedings, including findings of fact as to the amount of vacation pay accrued.

CONCLUSION.

The findings and conclusions support the judgment as to liability. However, the damage award is excessive, and that portion of the judgment is reversed. The case is remanded for entry of amended findings and conclusions and an amended judgment. No costs are awarded. Although Gunn has requested oral argument, it is the judgment of the panel that oral argument is not necessary. *Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.