IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1265

_____

**FILED**

May 21, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE FARM FIRE & CASUALTY COMPANY,
Petitioner

v.

ROBIN SKINNER PRINZ, the Personal Representative of the
ESTATE OF KYLE HOFFMAN, JR.,
Respondent

_____

Appeal from the Circuit Court of Jefferson County
The Honorable David Sanders, Judge
Civil Action No. 09-C-415

REVERSED AND REMANDED

_____

Submitted: January 15, 2013
Filed: May 21, 2013

E. Kay Fuller, Esq.                      Stephen G. Skinner, Esq.
Martin & Seibert, L.C.                   Skinner Law Firm
Martinsburg, West Virginia               Charles Town, West Virginia
Counsel for the Petitioner               Timothy P. Bosson, PHV
                                         Simms Showers, LLP
                                         Leesburg, Virginia
                                         Counsel for the Respondent

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "W.Va.Code § 57-3-1 (1937) does not bar any party in a wrongful death, medical malpractice action from testifying about conversations with the deceased patient." Syllabus Point 8, *Hicks v. Graphery*, 212 W. Va. 327, 571 S.E.2d 317 (2002).

2.      "Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syllabus Point 1, *Bennett v. Warner*, 179 W. Va. 742, 372 S.E.2d 920 (1988).

3.      "The West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts." Syllabus Point 7, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

4.      "Rule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether or not an expert is qualified to give an opinion. Therefore, to the extent that *Gilman v. Choi*, 185 W. Va. 177, 406 S.E.2d 200 (1990) indicates that the legislature may by statute determine when an expert is qualified to state an opinion, it is overruled." Syllabus Point 6, *Mayhorn v. Logan Med. Found.*, 193 W. Va. 42, 454 S.E.2d 87 (1994).

5.      "The provisions contained in W. Va. Code § 55–7B–6d (2001) (Supp.2004) were enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution. Consequently, W. Va.Code § 55–7B–6d, in its entirety, is unconstitutional and unenforceable." Syllabus Point 3, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005).

6.      Because it addresses evidentiary matters that are reserved to and regulated by this Court pursuant to the Rule-Making Clause, Article VIII, § 3 of the West Virginia Constitution, West Virginia Code § 57-3-1 (1937), commonly referred to as the Dead Man's Statute, is invalid, as it conflicts with the paramount authority of the West Virginia Rules of Evidence.

7.      In actions, suits or proceedings by or against the representatives of deceased persons, witness testimony and documentary evidence pertaining to any statement of the deceased, whether written or oral, shall not be excluded solely on the basis of competency.

BENJAMIN, Chief Justice:

The instant case is before the Court upon the appeal of State Farm Fire & Casualty Company ("State Farm"), Petitioner, from a June 13, 2011, judgment order and an August 4, 2011, order denying its motion to alter or amend verdict or for a new trial. State Farm alleges that the Circuit Court of Jefferson County erred in (1) applying the Dead Man's Statute, W. Va. Code §57-3-1 (1937), and prohibiting the jury from considering testimony from the decedent's family members regarding where the decedent was residing on the date of his death, (2) precluding the introduction of documentary evidence on the same grounds, and (3) failing to properly instruct the jury on the definition of the term "household" as utilized in the subject State Farm policy. Based upon the record before us, the arguments of the parties, and the applicable precedent, we reverse the decision of the circuit court and remand this matter for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2007, William Lee Piper, the driver, was killed in a motor vehicle accident in Jefferson County, West Virginia. His passenger, Kyle Hoffman, Jr., was also killed. Thereafter, the Estate of Kyle Hoffman, Jr. filed suit against the Estate of William Lee Piper. Count I of the complaint asserted a wrongful death claim against the Estate of William Lee Piper, and Count IV was an insurance coverage claim against State Farm. By agreement of the parties, the case was bifurcated into two parts for trial: a

1

declaratory judgment action of insurance coverage involving State Farm and the tort action on the underlying wrongful death claim.

The declaratory judgment coverage action involved the question of whether William Lee Piper was a resident of the home of his grandparents in Berryville, Virginia, at the time of his death. If he was, there would be coverage under a State Farm personal liability umbrella policy issued to Mr. Piper's grandfather, Paul Massanopoli. State Farm asserted that William Piper lived with his parents, Julie and David Piper, in Harpers Ferry, West Virginia, on the date of his death.

The jury considered the following evidence presented by the Respondent, Robin Skinner Prinz, as personal representative of the Estate of Kyle Hoffman, Jr., at trial: (1) that Piper's valid Virginia driver's license listed his grandparents' address in Virginia as his residence; (2) that three weeks before the accident, Piper titled and registered his vehicle that he was driving at the time of the crash using his grandparents' address in Virginia; (3) that he listed his grandparents' home in Virginia on his application for automobile insurance with Geico weeks before the accident and Geico issued an automobile insurance policy to Piper at the Virginia address; (4) that nine days before the accident, Piper listed his grandparents' Virginia address as his address on a federal W-4 form, a federal employment eligibility form, and a West Virginia Certificate of Non-residence; and (5) that an official high school transcript listed Piper as being enrolled in high school in Virginia from 2002 through 2006 and that his parents and

grandparents had a joint custody agreement allowing Piper to live with his grandparents for the purpose of attending high school.

To counter this evidence, State Farm sought to introduce evidence that William Piper resided in Harpers Ferry, West Virginia, including his parents' tax returns on which he was listed as a dependent; letters of administration creating his estate in West Virginia; and his obituary. Kyle Hoffman, Sr., the decedent plaintiff's father, executed an affidavit admitting that William Piper resided with his parents in Harpers Ferry, West Virginia. Julie and David Piper, William Piper's parents, Sara Piper, and William Massanopoli each testified in proffers that William Piper resided with his parents in Harpers Ferry on the date of his death. However, the circuit court, in granting Prinz's pre-trial motion *in limine*, excluded this evidence finding that it was barred by the Dead Man's Statute, W. Va. Code § 57-3-1,[1] as irrelevant, or hearsay. In explaining its ruling, the circuit court held,

---

[1] West Virginia Code § 57-3-1 provides,

> No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir at

(continued . . .)

3

> [I]n the instant case, any testimony regarding where William Lee Piper lived and his motivations or intent in signing these legal documents to the effect that he lived with his grandfather would necessarily involve testimony regarding personal transactions with the deceased. Such testimony by interested parties such as William Lee Piper's family members would relate to the course of conduct offered to prove the truth of the matter asserted and would therefore be barred by the Dead Man's statute.

On June 2, 2011, the jury returned a verdict finding that Piper lived with his grandparents, thus finding in favor of Prinz on the coverage issue. State Farm filed a motion to alter or amend the jury verdict alleging that the circuit court erred in applying the Dead Man's Statute and prohibiting the jury from considering testimony from William Piper's family members regarding where he resided on the date of his death, in precluding the introduction of documentary evidence on the same grounds, and in failing

> law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. But this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf, nor as to which the testimony of such deceased person or lunatic shall be given in evidence: Provided, however, that where an action is brought for causing the death of any person by any wrongful act, neglect or default under article seven [§ 55-7-1 et. seq.], chapter fifty-five of this Code, the person sued, or the servant, agent or employee of any firm or corporation sued, shall have the right to give evidence in any case in which he or it is sued, but he may not give evidence of any conversation with the deceased.

4

to properly instruct the jury on the definition of the term "household" as utilized in the subject State Farm policy. The circuit court denied State Farm's post-trial motion, finding that

> [t]he witnesses proffered by Defendant State Farm were interested parties whose testimony was intended to describe personal transactions or communications with the deceased Will Piper. Moreover, the Court did not err when it also excluded documents created after the death of Will Piper under the Dead Man's Statute. Finally, the Court did not err in disallowing the Defendant's jury instruction on the term "Household," as the focus of the insurance policy at issue was the "primary residence" of the individual seeking coverage.

State Farm now appeals the circuit court's order denying its motion to alter or amend the verdict or for a new trial and the final judgment order.

## II.

## STANDARD OF REVIEW

With respect to the standard of review regarding the application of the Dead Man's Statute, this Court has held,

> [I]n reviewing a circuit court's application of the Dead Man's Statute, we utilize a bifurcated process. First, we review a circuit court's fact finding for clear error and give due deference to the circuit court's application of the statute to the facts applying an abuse of discretion standard. *McDougal v. McCammon*, 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995); *Michael v. Sabado*, 192 W.Va. 585, 595, 453 S.E.2d 419, 429 (1994); *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 666–67, 346 S.E.2d 812, 817 (1986). To the extent the exclusion of the evidence was based either upon a legal precept or an interpretation of a statute, our review is plenary. In other words, we review a circuit court's ruling on

5

the admissibility of testimony under an abuse of discretion standard, but to the extent a circuit court's ruling turns on an interpretation, meaning, or scope of the statute or a rule of evidence our review is *de novo*. *Gentry v. Mangum*, 195 W.Va. 512, 517–18, 466 S.E.2d 171, 176–77 (1995).

*Meadows v. Meadows*, 196 W. Va. 56, 59, 468 S.E.2d 309, 312 (1996).

## III.

## ANALYSIS

### A. Dead Man's Statute

The first two assignments of error presented by State Farm concern whether the circuit court erroneously applied the Dead Man's Statute[2] in prohibiting the testimony of family members and the introduction of documentary evidence concerning where the decedent resided on the date of his death. State Farm contends that the three general conditions necessary to bar the witnesses' testimony have not been met.[3] Specifically,

---

[2] *See* the text of the Dead Man's Statute *supra* note 1.

[3] In syllabus point 10 of *Moore v. Goode*, 180 W. Va. 78, 375 S.E.2d 549 (1988), this Court held the following:

> To summarize the basic operation of the Dead Man's Act, W.Va.Code, 57-3-1, a concurrence of three general conditions must be met in order to bar the witness's testimony. First, the testimony must relate to a personal transaction with a deceased or insane person. Second, the witness must be a party to the suit or interested in its event or outcome. Third, the testimony must be against the deceased's personal representative, heir at law, or beneficiaries or the assignee or committee of an insane person.

State Farm asserts that no interested parties were proffered to testify, the proffered testimony did not concern personal transactions with the deceased, and the testimony was not proffered against the deceased. Conversely, Prinz asserts that the circuit court did not abuse its discretion in finding that the testimony of Piper's family members regarding his residence necessarily concerns "personal transactions" with the deceased because the testimony involved mutuality and concert of action; that the proffered witnesses were all interested parties within the meaning of the Dead Man's Statute; and that the testimony was against the deceased. In reviewing the parties' arguments, however, neither party addresses what we believe is the larger, overarching issue requiring attention in this case: the continued vitality of the Dead Man's Statute, W. Va. Code § 57-3-1. We believe this issue should now be addressed.

This Court discussed the history and purpose of the Dead Man's Statute in *Meadows v. Meadows*, 196 W. Va. 56, 60, 468 S.E.2d 309, 313 (1996). Therein, we stated,

> At common law, no party or person interested in the results or outcome of the judicial proceedings was permitted to testify. The interest of a witness was an absolute disqualification which precluded the witness from giving any testimony. "Thus, as a result of inordinate concern about the possibility of witness perjury, the persons having the greatest knowledge of the facts in dispute were often denied the opportunity to relate that information to the trier of fact. Because such sweeping rules of incompetency could cause significant injustice, they were a target for early reformers of the law of evidence[.]" Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 6.1 at 498 (1995). (Footnote omitted).

7

In 1843, the disqualification of interested persons was removed in England by statute. 6 and 7 Vict. c. 85 (1843). England started the reform that led to the statutory removal of these qualifying elements in practically every state, including West Virginia. The West Virginia statute, now codified as W.Va.Code, 57–3–1, first was adopted in 1868. It states in pertinent part: "No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto[.]" Like Rule 601, the statute sweeps away the traditional objection to competency of witnesses, but with the following one exception known as the "Dead Man's Statute":

> "No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person[.]"

The purpose of the West Virginia Dead Man's Statute is to prevent the injustice that would result from a surviving party to a transaction testifying favorably to himself or herself and adversely to the interest of a decedent, when the decedent's representatives would be hampered in attempting to refute the testimony by reason of the decedent's death. The statute accomplishes this purpose and aids the estate not by making the testimony itself incompetent but, instead, by making the witness incompetent to testify to such matters. In note 6 of *Cross v. State Farm Mutual Automobile Insurance Co.*, 182 W.Va. at 325–26, 387 S.E.2d at 561, we explained that the underlying rationale of dead man's statutes "is that a survivor's lips should be sealed because the lips of the decedent are sealed." In these instances, "the decedent is unable to confront the survivor, give his or her version of the

8

transaction or communication and expose the possible omissions, mistakes or even outright falsehoods of the survivor." 182 W.Va. at 326 n. 6, 387 S.E.2d at 561 n. 6. Thus, the premise of the statutes is "that there is a very strong temptation to lie or to conceal material facts to the detriment of the decedent's representative(s)." 182 W.Va. at 326 n. 6, 387 S.E.2d at 561 n. 6, *citing* Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 2.2(D)(1) at 40–41 (2nd ed. 1986); *Moore v. Goode*, 180 W.Va. 78, 89, 375 S.E.2d 549, 560 (1988); *Miami Coal Co., Inc. v. Hudson*, 175 W.Va. 153, 158–59, 332 S.E.2d 114, 119 (1985).

*Id*. at 60-61, 468 S.E.2d at 313-14 (footnote omitted).

Acknowledging the criticisms that scholars maintained regarding the statute, this Court observed in *Meadows* that "Dead man's statutes have been criticized by about every scholar that has addressed the issue." *Id*. at 61 n. 6, 468 S.E.2d at 314 n. 6 (citing Mueller & Kirkpatrick, Evidence § 6.1 at 504 ("the effectiveness of such statutes is questionable, because a claimant bent on fraud may be able to fabricate some other form of evidence or suborn perjury by a third person whose testimony is not barred"). *See also*, Mason Ladd, *The Dead Man Statute: Some Further Observations and a Legislative Proposal*, 26 Iowa L.Rev. 207 (1941); Roy Ray, Dead Man's Statutes, 24 Ohio St.L.J. 89 (1963)). This Court went on in *Meadows* to explain that the restricting nature of the exception in the statute required it to be strictly and narrowly construed. In doing so, we stated,

W.Va.Code, 57–3–1, created a change whereby the competency of witnesses became the general rule and incompetency the exception. It is obvious that the first part of W.Va.Code, 57–3–1, is in derogation of common law;

9

nevertheless, to the extent that it removes the disqualification of a witness because of interest, it should be construed liberally as a remedial statute. *See State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995) ("[w]here an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended").

By adopting the first part of the statute, the Legislature intended to expand the opportunities to use testimony which previously had been excluded. This availability is consistent with the general rule announced in Rule 601. We believe that the exclusion of the testimony of a party merely because of interest more likely will result in widespread injustices than would a rule of admissibility subject to the traditional adversarial testing. *See Gentry v. Mangum*, 195 W.Va. 512, 527, 466 S.E.2d 171, 186 (1995) (" '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence' "), *quoting Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469, 484 (1993); *State v. Thomas*, 187 W.Va. 686, 691, 421 S.E.2d 227, 232 (1992) ("[c]ross-examination is the engine for truth"). *See also Cross v. State Farm Mut. Auto. Ins. Co., supra*; *Keller v. Hartman*, 175 W.Va. 418, 333 S.E.2d 89 (1985).

On the other hand, to the general rule of witness competency, W.Va. Code, 57–3–1, makes one exception—the Dead Man's Statute. This exception is a limitation on the remedial aspects of the statute because it restricts the testimony of an interested party. Therefore, the language of the Dead Man's Statute should be strictly construed and limited to its narrowest application. *See Harper v. Johnson*, 162 Tex. 117, 345 S.W.2d 277 (1961). By applying this rule, we reduce to a minimum the restrictions on the broader remedial statute. Furthermore, we believe that only a restrictive application of the Dead Man's Statute is consistent with the liberal thrust of the West Virginia Rules of Evidence. 1 Cleckley, supra § 1–4(A) at 11 (3rd ed.) (the West Virginia Rules of Evidence "indicate an enhanced confidence in the jury system and the role of the adversarial cross-examination").

10

*Meadows*, 196 W. Va. at 61, 468 S.E.2d at 314.

In examining the purpose of the Dead Man's Statute in *Meadows*, this Court overruled two prior decisions of this Court, *Freeman v. Freeman*, 71 W. Va. 303, 76 S.E. 657 (1912) (syllabus point five) and *Kuhn v. Shreeve*, 141 W. Va. 170, 177, 89 S.E.2d 685, 691 (1955), which more broadly construed the statute, both holding that the term "personal transactions" as referred to in the statute "include[s] every method whereby one person may derive impressions or information from the conduct, condition or language of another." In *Meadows*, we held:

> Upon a reexamination of the purpose of the Dead Man's Statute, in light of all our past decisions and those from other jurisdictions and with regard to the probable legislative intent, we are unable to follow the precedent established in *Kuhn* and *Freeman* that the statute was intended to include the mere unilateral observations and opinions of a survivor of a deceased. The rule of strict construction does not permit such an extension of the Dead Man's Statute by this Court. As we construe the statute, the circuit court committed error by barring the testimony of the plaintiff as to her mental or physical observations and descriptions of the deceased which antedated and post-dated the execution of the will.

196 W. Va. at 62, 468 S.E.2d at 315.

Following *Meadows*, this Court further narrowed the application of the Dead Man's Statute in *Hicks v. Ghaphery*, 212 W. Va. 327, 571 S.E.2d 317 (2002), by ruling that the statute was inapplicable in wrongful death, medical malpractice actions.

11

This Court held in syllabus point eight that "W. Va. Code § 57-3-1 does not bar any party in a wrongful death, medical malpractice action from testifying about conversations with the deceased patient." *Id.* In carving out this exception to the Dead Man's Statute, this Court reasoned that

> [o]bviously, the focus of a medical malpractice case is the care and treatment of the patient. In the instance where the patient is deceased, it would be patently unfair to exclude evidence of a patient's complaints regarding their symptoms and ailments and their decisions as to what type of treatment they wished to undergo. In some cases, a patient's subjective description of their ailments may be the sole basis for a physician's diagnosis and treatment. Barring any party's testimony in these circumstances is against "the policy of law to make available all relevant evidence in the quest for truth." *Meadows*, 196 W. Va. at 63, 468 S.E.2d at 316. Moreover, "[j]ustice ordinarily will not prevail where only a part of the available evidence affords the only support for the judgment rendered." *Id.* We are confident that a jury which has been presented with all the available evidence is capable of sorting out said evidence, making relevant findings, and returning a proper verdict.
>
> Although the Legislature has modified certain aspects of the common law relating to wrongful death and personal injury through the MPLA, it has never addressed the applicability of the Dead Man's Statute in medical malpractice cases. In *Meadows*, we pointed out that "the West Virginia Supreme Court possesses paramount authority to adopt rules of evidence for trial courts in this State." 196 W.Va. at 59, 468 S.E.2d at 312. In that regard, Article VIII, Section 3 of the West Virginia Constitution provides that this Court "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law." *See also* Syllabus Point 3, *Mazzone* [214 W. Va. 146, 587 S.E.2d 122 (2002)], *supra*.

*Id*. at 339-40, 571 S.E.2d at 329-30.

12

Indeed, Dead Man's Statutes have been the subject of criticism almost since their inception.[4]  MCCORMICK ON EVIDENCE, § 65, states,

> More fundamentally, most commentators agree that the expedient of refusing to listen to the survivor is, in Bentham's words, "blind and brainless." In seeking to avoid injustice to one side, the statutory drafters ignored the equal possibility of creating injustice to the other. The survivor's temptation to fabricate a claim or defense is evident enough – so obvious indeed that any jury should realize that his story must be cautiously heard.  A searching cross-examination will often, in case of fraud, reveal discrepancies in the "tangled web" of deception.  In any event, the survivor's disqualification is more likely to disadvantage the honest than the dishonest survivor.  One who would resort to perjury will hardly hesitate at suborning a third person, who would not be disqualified, to swear to the false story.

1 JOHN W. STRONG, ET AL., MCCORMICK ON EVIDENCE, § 65, at 278 (5th Ed. 1999) (footnote omitted).

---

[4] As one law review article notes,

> Dead Man's statutes have received constant criticism since their first appearance almost 150 years ago; however, these statutes still remain valid law in many states.  Dead Man's statutes are confusing to lawyers, judges, scholars and the average citizen, as "the mere mention of the [Dead Man's] statute is enough to make most practitioners shudder."  More importantly, these statutes are unfairly prejudicial to those truly honest people who have valid claims but are nevertheless prevented from testifying in court.

Ed Wallis, *An Outdated Form of Evidentiary Law: A Survey of Dead Man's Statutes and a Proposal for Change*, 53 Clev. St. L. Rev. 75, 76 (2005-2006) (footnote omitted).

Likewise, WIGMORE ON EVIDENCE, § 578 states,

> As a matter of policy, this survival of a part of the now discarded interest qualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words.

2 JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE §578, at 822 (Chadbourn rev. ed. 1979).

Applying similar criticisms to West Virginia's Dead Man's Statute, Professor Franklin D. Cleckley has stated as follows:

> The Dead Man's statute manifests the cynical view that a party will be untruthful when the party cannot be directly contradicted and the unrealistic assumption that jurors, knowing the situation, will believe anything they hear in these circumstances. While motivated by the laudable desire to protect decedents' and incompetents' assets from attack based on perjured testimony, Dead Man's statutes, surviving relics, likely have led to more miscarriages of justice than they have prevented. In any event, the Dead Man's statute is to be narrowly construed to permit the admission of relevant testimony, unless clearly excluded by the language and purpose of the statute. Noting that the rationale behind the statute is to prevent survivors from committing omissions, mistakes, or even outright falsehood, the state Supreme Court pointed out that most commentators believe that weight, not admissibility, ought to be the real concern.
>
> The provisions of the Dead Man's statutes, which are found in some but not all American jurisdictions, vary somewhat from jurisdiction to jurisdiction. Universally condemned by the giants of evidence law, these statutes appear to embody a pathological fear of undetectable perjury, which the statutes doggedly appear to assume all – or most – survivor witnesses will commit. Instead of leaving the credibility of the survivor

to the jury and seeking some other procedure to redress the perceived imbalance of proof, the typical statute, like the one in West Virginia, condemns the honest survivor to a frequently insuperable task of trying to prove a valid claim with his or her own testimony.

To be clear, unlike bars to testimony based on age, mental capacity, and lack of perception, the Dead Man's statute does not preclude testimony on the ground that the witness' perception, memory, or communications skills are impaired. On the contrary, it is irrebuttably presumed under the Dead Man's statute that the survivor will commit perjury whenever asked to testify about transactions with the deceased. Most importantly, the statute conclusively presumes that oath, cross-examination, and witness' demeanor will be insufficient to enable the trier of facts to detect the insincerity of the survivor witness.

1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 601.02[4][a] (5th ed. 2012) (footnotes omitted).

"Most states have abolished their Dead Man's Statute by express repeal or through abrogation by the Rules of Evidence." Wesley P. Page, *Dead Man Talking: A Historical Analysis of West Virginia's Dead Man's Statute and a Recommendation for Reform*, 109 W. Va. L. Rev. 897, 917 (2007). Specifically, in some jurisdictions, Dead Man's Statutes "which provide[d] a complete bar on the acceptance of the testimony of one bringing an action against a decedent's estate have been effectively repealed or abrogated by the passage or enactment of a rule of evidence rendering all witnesses competent to testify." 81 Am. Jur. 2d Witnesses § 545 (Feb. 2013) (citing *Ashmore v. Ford*, 267 Ark. 854, 591 S.W.2d 666 (Ct. App. 1979); *Kirk v. Marquis*, 391 A.2d 335 (Me. 1978); *Matter of Estate of Arend*, 373 N.W.2d 338 (Minn. Ct. App. 1985); *McNulty*

15

*v. Bewley Corp.*, 182 Mont. 260, 596 P.2d 474 (1979); *Matter of Estate of Bergman*, 107 N.M. 574, 761 P.2d 452 (Ct. App. 1988); *First Nat. Bank of Minot v. Bloom*, 264 N.W.2d 208 (N.D. 1978); *Johnson v. Porter*, 471 N.E.2d 484 (Ohio 1984)).

"In one jurisdiction, such a rule expressly repealed a constitutional 'dead man's' provision." *Id.* (citing *Davis v. Hare*, 561 S.W.2d 321 (Ark. 1978)). In other jurisdictions, the rule of evidence making all witnesses competent has been found to supercede a Dead Man's Statute which provides that the testimony of one having a claim against a representative of a decedent must be corroborated by other evidence. *Id.* (citing *Matter of Estate of Backofen*, 404 N.W.2d 675 (Mich. 1987); *Dahn v. Sheets*, 305 N.W.2d 547 (Mich. 1981); *James v. Dixon*, 291 N.W.2d 106 (Mich. 1980); *Powers v. McDaniel*, 785 S.W.2d 915 (Tex. App. San Antonio 1990), writ denied, (June 27, 1990)).

Of the remaining states that have not expressly repealed their Dead Man's Statutes or found them to be abrogated by the enactment of the Rules of Evidence, the statutes vary in scope and effect. Page, *supra,* at 917. Only nine states have retained a Dead Man's Statute in some form. Wallis, *supra,* at 82 (overviewing the following state's Dead Man's Statutes: Florida, Indiana, Louisiana, Maryland, South Carolina, Tennessee, Washington, West Virginia, and Wisconsin.).

In West Virginia, Rule 601 of the West Virginia Rules of Evidence explicitly provides that existing statutory enactments regarding witness competency are

16

not superseded by the rule. Cleckley, *supra,* at § 601.02[4][a].  W. Va. R. Evid. 601 provides that "[e]very person is competent to be a witness except as otherwise provided for *by statute* or these rules." (emphasis added).  In *Cross v. State Farm Mut.*, 182 W. Va. 320, 387 S.E.2d 556 (1989), this Court acknowledged that the Dead Man's Statute had not been abrogated by the adoption of Rule 601:

> At the outset we note that the Dead Man's Statute is still valid under the language of Rule 601 of the West Virginia Rules of Evidence, entitled "General Rule of Competency": "Every person is competent to be a witness except as provided for by statute or these rules.  In his reporter's notes to the West Virginia Rules of Evidence, Professor Cleckley states: "WVRE 601 is consistent with prior West Virginia law in that it still requires the exclusion of testimony based on grounds covered by the West Virginia Dead Man's Act. W. Va. Code § 57-3-1."

*Id*. at 325, 387 S.E.2d at 560.  Although "Rule 601 represents a 'general ground-clearing' of impediments to the truthfinding function of a court of law,"[5] this Court acknowledged in *Meadows* that "by virtue of Rule 601 [it] has elected to defer to the Legislature when the Legislature enacts statutes on the competency of witnesses.  Indeed, the primary purpose for providing for the exception in Rule 601 was to protect the integrity of the West Virginia Dead Man's Statute." *Id.* at 60, 468 S.E.2d at 313.

Although we have recognized that Rule 601 of the West Virginia Rules of Evidence generally permits evidentiary statutes like the Dead Man's Statute to be created

---

[5] Cleckley, *supra*, at §601.02[2][c][i].

17

by the Legislature, this does not deprive this Court of all authority to further review or revisit a particular evidentiary statute to determine its continued validity. This Court unquestionably possesses paramount authority to adopt and amend rules of evidence for trial courts in this State. *See Mayhorn v. Logan Med. Found.*, 193 W. Va. 42, 49, 454 S.E.2d 87, 94 (1994); *Teter v. Old Colony Co.*, 190 W.Va. 711, 724, 441 S.E.2d 728, 741 (1994); *Gilman v. Choi*, 185 W. Va. 177, 406 S.E.2d 200 (1990), *overruled on other grounds by Mayhorn*. Pursuant to the Rule–Making Clause of the West Virginia Constitution, the Supreme Court of Appeals "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law." W. Va. Const. art. 8, § 3. "Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syl. Pt. 1, *Bennett v. Warner*, 179 W. Va. 742, 372 S.E.2d 920 (1988). In this regard, "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts." Syl. Pt. 7, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

This Court has not hesitated to invalidate a statute that conflicts with our inherent rule-making authority. For example, in *Gilman v. Choi*, 185 W. Va. 177, 406 S.E.2d 200 (1990), this Court decided the issue of whether the Legislature could enact a statute which addressed the competency of an expert. We found that pursuant to W. Va.

18

R. Evid. 601, the Legislature could enact W. Va. Code § 55-7B-7 (1986), which outlines the qualifications of an expert in a medical malpractice case. *Id.* at 179, 406 S.E.2d at 202. However, subsequently, this Court revisited the *Gilman* decision in *Mayhorn v. Logan Medical Foundation*, 193 W. Va. 42, 454 S.E.2d 87 (1994), and we determined that Rule 601 should not be used to allow the Legislature to outline when an expert is qualified. Rather, we found that W. Va. R. Evid. 702 was the governing authority. *Id.* at 49, 454 S.E.2d at 94. We held in syllabus point 6 that

> [r]ule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether or not an expert is qualified to give an opinion. Therefore, to the extent that *Gilman v. Choi*, 185 W. Va. 177, 406 S.E.2d 200 (1990) indicates that the legislature may by statute determine when an expert is qualified to state an opinion, it is overruled.

*Id.* at Syl. pt. 6. *See also Laxton v. Nat'l Grange Mut. Ins. Co.*, 150 W. Va. 598, 148 S.E.2d 725 (1966), *overruled on other grounds by, Smith v. Mun. Mut. Ins. Co.,* 169 W. Va. 296, 289 S.E.2d 669 (1982) (holding that the procedural provisions of W. Va. Code § 56-4-21, a statute mandating that certain defenses be asserted affirmatively by a statement in writing and under oath on any insurance policy action, were superseded by the adoption of the West Virginia Rules of Civil Procedure); *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) (invalidating a statute that was in conflict with W.Va. R. Evid., Rule 702); *West Virginia Div. of Highways v. Butler*, 205 W. Va. 146, 516 S.E.2d 769 (1999) (invalidating a statute that was in conflict with W. Va. R. Evid., Rule 702); *Games–Neely ex rel. West Virginia State Police v. Real Property*, 211 W. Va. 236, 565 S.E.2d 358 (2002) (concluding that Rule 60(b) applies to forfeiture proceedings

19

under the Forfeiture Act and supersedes West Virginia Code § 60A–7–705(d) to the extent that Section 705(d) can be read to deprive a circuit court of its grant of discretion to review a default judgment order).

Similarly, in *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005), this Court concluded that the non-unanimous verdict provisions of W. Va. Code § 55-7B-6d were in conflict with Rule 48 of the *West Virginia Rules of Civil Procedure*. We held the following in syllabus point three:

> The provisions contained in W. Va. Code § 55–7B–6d (2001) (Supp.2004) were enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution. Consequently, W. Va.Code § 55–7B–6d, in its entirety, is unconstitutional and unenforceable.

*Louk*, 218 W. Va. 81, 622 S.E.2d 788.

In deciding the issue before us in *Louk*, we noted the following about the Court's rule-making authority:

> The decisions in *Laxton*, *Mayhorn* and *Games–Neely* are illustrative of this Court's longstanding position that "the legislative branch of government cannot abridge the rule-making power of this Court." *In re Mann*, 151 W.Va. 644, 651, 154 S.E.2d 860, 864 (1967), *overruled on other grounds by Committee on Legal Ethics of West Virginia State Bar v. Boettner*, 183 W.Va. 136, 394 S.E.2d 735 (1990). *See also* Syl. pt. 2, *Williams v. Cummings*, 191 W.Va. 370, 445 S.E.2d 757 (1994) ("West Virginia Code § 56–1–1(a)(7) provides that venue may be obtained in an adjoining county '[i]f a

20

judge of a circuit be interested in a case which, but for such interest, would be proper for the jurisdiction of his court....' This statute refers to a situation under which a judge might be disqualified, and therefore it is in conflict with and superseded by Trial Court Rule XVII, which addresses the disqualification and temporary assignment of judges."); *State v. Davis*, 178 W.Va. 87, 90, 357 S.E.2d 769, 772 (1987) (holding that W. Va. R.Crim. P. 7(c)(1) supersedes the provisions of W. Va.Code § 62–9–1 (1931) to the extent that the statute requires the indorsement of the grand jury foreman and attestation of the prosecutor on the reverse side of the indictment), overruled on other grounds by *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994); *Hechler v. Casey*, 175 W.Va. 434, 449 n. 14, 333 S.E.2d 799, 815 n. 14 (1985) ("W. Va.Code, 53–1–8 [1933], applicable to both mandamus and prohibition proceedings, authorizes an award of either of these types of writs with or without costs as the court or judge may determine. W. Va.R.App. P. 23(b), however, . . . precludes an award of costs to the State in this Court. This Court's procedural rule, to the extent it conflicts with the procedural statute, supersedes the statute."); Syl., *State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 306 S.E.2d 233 (1983) ("The constitutional separation of powers, W. Va. Const. art. V, § 1, prohibits the legislature from regulating admission to practice and discipline of lawyers in contravention of rules of this Court."); Syl. pt. 2, *Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977) ("The administrative rule promulgated by the Supreme Court of Appeals of West Virginia, setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge, operates to supersede the existing statutory provisions found in W. Va.Code, 51–2–9 and –10 and W. Va.Code, 56–9–2, insofar as such provisions relate to the selection of special judges and to the assignment of a case to another circuit judge when a particular circuit judge is disqualified."); *Montgomery v. Montgomery*, 147 W.Va. 449, 128 S.E.2d 480 (1962) (holding that the bills of exception requirement for an appeal under W. Va.Code § 56–6–35 was abolished by Rule 80).

*Id*. at 91, 622 S.E.2d at 798.[6]

Accordingly, because the Dead Man's Statute is a heavily antiquated rule of evidentiary law, we believe West Virginia should, at last, join the majority of other jurisdictions throughout the United States. Consequently, we now find that, because it addresses evidentiary matters that are reserved to and regulated by this Court pursuant to the Rule-Making Clause, Article VIII, § 3 of the West Virginia Constitution, W. Va. Code § 57-3-1, commonly referred to as the Dead Man's Statute, is invalid, as it conflicts with the paramount authority of the West Virginia Rules of Evidence. In actions, suits or proceedings by or against the representatives of deceased persons, witness testimony and documentary evidence pertaining to any statement of the deceased, whether written or oral, shall not be excluded solely on the basis of competency.

Although we hold W. Va. Code § 57-3-1 to be invalid and thus, reverse the circuit court's rulings and remand this case for a new trial, we observe that the proffered testimony and evidence at issue must nevertheless be admissible under the remaining Rules of Evidence. As we stated in *Meadows*,

---

[6] Furthermore, it is especially noteworthy that the committee assigned to review the West Virginia Rules of Evidence is currently considering the viability of the language contained in W. Va. R. Evid. 601 which gives the Legislature the ability to create evidentiary statutes. That said, we wish to make it clear that the holdings in this opinion should not be construed to deprive the Legislature of its current general authority under W. Va. R. Evid. 601 to create evidentiary statutes unless or until such time that a revised Rule 601 would so reflect.

22

[t]o place what we have decided in proper context, it must be emphasized that should the proffered evidence not be excludable under the West Virginia Dead Man's Statute the evidence, nevertheless, must be admissible under the remaining West Virginia Rules of Evidence. All evidence must be relevant under Rules 401, 402, and 403 (relevancy), Rule 602 (firsthand knowledge), Rule 701 (lay-opinion testimony), and Rule 802 (hearsay). If the evidence fails under any of these rules, it should be excluded. Furthermore, in appropriate cases, the opponent is entitled to a limiting instruction advising the jury of the limited purpose for which the evidence is admitted, *i.e.* to prove mental competency.

*Id.* at 63, 468 S.E.2d at 316.[7]

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the August 5, 2011, order of the Circuit Court of Jefferson County denying State Farm's Motion to Alter or Amend Verdict or For a New Trial, and remand the matter to the circuit court for a new trial.

Reversed and Remanded.

---

[7] Because we reverse the circuit court's order on the first two assignments of error presented, we will not address State Farm's final assignment of error.